JOHN G. MILLER v. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY
COMPANY and Another.[1]

February 28, 1908.

Nos. 15,506—(204).

**Evidence—Charge—Damages.**

In an action to recover for personal injuries, it is *held* (1) that the evidence is sufficient to sustain a verdict for plaintiff; (2) that there were no errors in the instructions of the court; and (3) that the damages, though large, are not so excessive as to justify interference by this court.

Action in the district court for Mower county to recover $15,000 damages for personal injuries. The case was tried before Kingsley,. J., and a jury which returned a verdict in favor of plaintiff for $6,400. From an order denying defendants' motion for judgment notwithstanding the verdict and granting their motion for a new trial unless plaintiff should consent to a reduction of the verdict from $6,400 to $5,000, defendants appealed. Affirmed.

*S. D. Catherwood* and *Webber & Lees,* for appellants.

*H. H. Dunn* and *Lafayette French,* for respondent.

BROWN, J.

Action to recover for personal injuries caused by the alleged negligence of defendants, in which plaintiff had a verdict, and defendants appealed from an order denying their alternative motion for judgment notwithstanding the verdict or for a new trial.

The record discloses the following facts: 'Plaintiff was in the employ of defendant railway company as a pump repairer. The pumps under his control were those used by the company in supplying its locomotives with water, and were stationed at different points along its line of road. Some were operated by gasolene engines, and others by means of windmills. Plaintiff claimed that his duties required him to look after and keep in repair the machinery connected with and which operated the pumps, to oil and keep the same in run-

[1] Reported in 115 N. W. 269.

ning order, but that he was not charged with any duty respecting the windmill towers or the repairing of platforms thereon. On the day of the accident he was ordered by defendant Caton, chief carpenter of the railway company on this division of the road, with general management of bridges, buildings, and windmills, and the direction and control of pump repairers and other subordinate employees in his department, to repair the windmill at Cresco, Iowa, in complying with which order he received the injuries complained of. This windmill is of the Aermotor manufacture and sixty five feet in height. The windmill proper is supported by a tower of steel posts, at the top of which, about sixty feet from the ground, is a platform thirty inches square, designed for use by those repairing the fans or machinery of the mill, or when oiling the gearing. The negligence relied upon for recovery consists in the claim that this platform was, and had been for a considerable time prior to the accident, defective and out of repair, in that the bolts and fastenings sustaining it in position had become so worn by long use as to cause the platform to tilt when stepped upon by a person using it; that long prior to the accident the chief carpenter, Caton, had been informed of this condition and had neglected to have proper repairs made.

The evidence tends to show that plaintiff ascended to and stood upon one side of the platform for the purpose of oiling the machinery of the windmill, that it became necessary to pass to the other side to complete his work, and that when he stepped upon that side the platform tilted or dropped down about two inches by reason of the looseness of its fastenings, causing plaintiff to lose his balance, and that to save himself from falling he grabbed the vane attached to the windmill and his hand was caught in the gearing, resulting in serious injuries. Plaintiff had a verdict for $6,400, which the trial court reduced to $5,000.

It is contended on this appeal (1) that the evidence is wholly insufficient to justify recovery by plaintiff, and a verdict should have been directed for defendants; and (2) that the court below erred in certain of its instructions to the jury.

1. The performance of plaintiff's duties on this occasion was attended with more or less danger. He was required to ascend to the

top of the windmill, and to occupy a position, while performing his work, upon the platform provided for that purpose. It is apparent from the situation presented that it was essential to the safety of those engaged on the platform that it be kept and maintained in suitable condition for use, and if the platform in question was not in that condition, but was negligently permitted to become out of repair and in a dangerous condition for use, defendant failed in its obligation to provide plaintiff a reasonably safe place in which to perform his work, and he may recover, unless he knew or ought to have known its condition before using it. A careful consideration of the evidence leads to the conclusion that the verdict should not be disturbed.

The evidence tends to show that the platform was out of repair and defective to such an extent that it was not reasonably safe for use by one not knowing its condition. The testimony is that its fastenings were loose, and had been for some seven or eight months prior to the accident. It is not material whether this condition is referable to the iron bolts upon which the platform rested at the points where they were attached to the steel frame, or to the loosening from the natural wear of the wood at the ends projecting through the boards of the platform, or both. The court submitted the question to the jury whether the "fastenings" of the platform were loose, and did not confine them to any particular fastening. A defect in either respect would sustain the finding of the jury that the platform was out of repair. Plaintiff testified that the platform tilted when he stepped upon it by reason of the looseness of the fastenings, and in his claim that the fastenings were loose he was corroborated by witness Pawling, a former employee of defendant company, who had been engaged in the work of pump repairing upon this line of road. This witness testified that he was familiar with this particular windmill, and that it was out of repair in the respect stated, and that the platform tipped when stepped upon by reason of the fact that the bolts fastening the same to the tower had worn themselves loose to such an extent as to cause it to wabble, and, further, that the fastenings had always been loose, and that he had called the attention of Caton, the chief carpenter of the road, to the fact seven months be-

fore the accident, and requested him to make proper repairs and put the platform and tower in suitable condition for use. On the other hand, the evidence offered by defendants tends strongly to show that the platform was in no way defective or out of repair, that it was in the usual condition of such appliances, and reasonably safe for those accustomed to performing work about such places. This evidence was for the consideration of the jury, and the pivotal question was submitted to them under fair instructions from the trial court; and, the evidence being conflicting, the verdict should not, under the rule guiding this court in such cases, be disturbed.

Nor does the evidence so clearly and palpably sustain defendants' contention that plaintiff knew, or ought to have known, that the platform was defective, as to justify interference by this court. Plaintiff testified that he did not know of its condition, that he had performed no work about it for six months prior to this occasion, and supposed that it was in good condition for use. It is claimed by the defendants that it was plaintiff's duty to repair the platform, if out of repair, and all other defects in the windmill and its appliances, and that if he had properly performed these duties he would have known that it was not in safe condition for use, and therefore has no legal basis for the claim of negligence lodged against defendants. Upon the question whether the repair of platforms or other woodwork about windmills was under plaintiff's charge and supervision and within the line of his duties, the evidence, as upon the other question, is conflicting. Plaintiff distinctly said that the repair of windmill platforms did not come within his employment; that his duties had exclusive reference to oiling machinery—tightening and repairing such defects in the ironwork as he discovered or that were called to his attention. In this he was again corroborated by the witness Pawling. The evidence offered by defendant, though strong and persuasive, is not so far conclusive as to justify us, in face of the sanction and approval given to the verdict by the trial court, in holding as a matter of law that the repair of the platform came within the scope of plaintiff's duties.

Though the evidence to sustain plaintiff's position is by no means

clear and free from doubt, whatever doubts we have entertained there-on have been overcome by the fact that the learned trial judge had the witnesses before him, with opportunity to observe their truthful-ness, and has given credence to plaintiff's evidence by sustaining the verdict. Much reliance must necessarily be placed by this court in all cases involving issues of fact upon the sound judgment of the trial judge. We are confronted with the cold record. The witnesses are not here, nor the atmosphere of the trial disclosed, and except in clear cases we would not be warranted in disturbing the solemn judgment of the trial court solving the merits of conflicting evidence, and the verdict in this particular case must therefore be sustained.

2. We have examined the other assignments of error, those chal-lenging the correctness of the instructions of the court to the jury and the modification of some of defendants' requests, and find no re-versible error. The damages, though large, were reduced by the trial court to $5,000, and were not so clearly excessive as to indicate passion or prejudice on the part of the jury to such an extent as to justify granting a new trial. Two middle fingers of the plaintiff's right hand were so seriously injured as to necessitate amputation, and it is claimed that the other two fingers are practically useless. If such is the real situation, and the trial court had an opportunity to observe, the damages are not out of proportion to the injuries sustained.

Nor was there any error in the instruction of the court that, if the jury found a verdict against one of the defendants, it would be necessary for them to find against both. We think this instruction correct. The same facts justified the jury in finding against both defendants. The railway company was negligent in failing to keep the platform in proper repair, and defendant Caton, who had general charge and superintendence of all windmills, and of the one in ques-tion, ordered plaintiff on this occasion to repair it; and, if the testi-mony of Pawling is to be believed, Caton knew at that time that the platform was out of repair and not in suitable condition for use, so that the jury could not well exonerate either defendant if they be-lieved the evidence necessary to entitle plaintiff to recover at all.

In other words, the evidence could not be found true as to one and not as to the other defendant.

Order affirmed.

PER CURIAM.

Our attention has been called to the fact that the opinion in this case erroneously states that defendant Caton ordered the plaintiff to repair the windmill in question on the day of the accident, and we take this method of correcting the mistake. Though plaintiff distinctly said on direct examination that such an order was given by Caton, he qualified it on cross-examination to such an extent that it may be said that no such order was in fact given. This would not, however, change the result arrived at in the opinion.